**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD E. HOLMES, | ) | No. ED CV 10-1206-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 17, 2010, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 8, 2010, and October 5, 2010. Pursuant to the Court's order, the parties filed a Joint Stipulation on June 3, 2011, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 19, 1949. [Administrative Record ("AR") at 141, 180.] He has a high school education and past work experience as a plumber. [AR at 47-48, 186-92, 196-98, 212-19.]

Plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments on May 5, 2009, alleging that he had been unable to work since January 15, 1999,[1] due to, among other things, back pain and depression. [AR at 14, 65-66, 139-48, 180-83, 193-204, 230-35.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 69-73, 75-80, 85.] A hearing was held on January 12, 2010, at which plaintiff appeared with counsel and testified on his own behalf. Two medical experts, a vocational expert, and plaintiff's girlfriend also testified. [AR at 26-64.] On February 5, 2010, the ALJ issued a partially favorable decision, finding plaintiff not disabled as of his date last insured,[2] but finding him disabled as of September 5, 2006. [AR at 9-22.] On June 14, 2010, the Appeals Council denied plaintiff's request for review of the hearing decision. [AR at 3-5.] Plaintiff then filed this action.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] At the hearing, plaintiff's counsel stated that the onset date of disability should be December 19, 1999. [AR at 14, 35.] However, in the Joint Stipulation ("JS"), the parties state that plaintiff alleges disability since January 15, 1999 [JS at 2], which is the same onset date that plaintiff alleged in his applications for Disability Insurance Benefits and Supplemental Security Income payments. [AR at 141, 180, 193.]

[2] The ALJ found plaintiff insured for Disability Insurance Benefits purposes through December 31, 2003. [AR at 14, 16, 35-36.]

evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made, and the claim is denied.  Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed, and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" ("RFC")[3] to perform his past work. If the claimant has an RFC sufficient to perform his past work, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

        In this case, at step one, the ALJ concluded that plaintiff did not engage in any substantial gainful activity since the amended alleged onset date of disability, December 19, 1999. [AR at 14, 16.]  At step two, the ALJ concluded that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, obesity, diabetes mellitus type II, persistent pain and infection effective September 2006 following multiple surgeries, pain disorder associated with psychological factors and general medical condition, depression not otherwise specified ("NOS"), and anxiety NOS. [AR at 16.] At step three, the ALJ concluded that, prior to December 31, 2003, the date plaintiff was last insured for Disability Insurance Benefits purposes, plaintiff did not meet

---

        [3]     RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

any of the sections of the Listing.  [AR at 16-17.]  The ALJ also determined that, as of September 5, 2006, plaintiff's impairments equal Listing 1.04.[4]  [AR at 17.]  The ALJ further found that, prior to December 31, 2003, plaintiff retained the RFC to perform light work[5] limited to "standing and/or walking for 2 hours per 8-hour workday; sitting for 6 hours per 8-hour workday with normal breaks such as every 2 hours and the provision to stand and stretch as needed for 1 to 3 minutes per hour; with occasional stooping, bending, or climbing of stairs; with no climbing of ladders, working at heights, or balancing; with occasional operation of foot pedals and controls; limited to nonpublic simple repetitive tasks; with no intense interaction with coworkers or supervisors; with no tasks requiring hypervigilance; and with no fast-paced work, such as rapid assembly lines."  [AR at 17.] At step four, the ALJ concluded that plaintiff has been unable to perform his past relevant work since December 19, 1999.  [AR at 20.]  At step five, the ALJ determined that, prior to December 31, 2003, plaintiff could have performed jobs that exist in significant numbers in the national economy.  [AR at 20-21.]  Accordingly, the ALJ found that plaintiff is not entitled to Disability Insurance Benefits, but that he is disabled for purposes of Supplemental Security Income payments as of September 5, 2006.  [AR at 21.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly consider treating physician Dr. Thomas Jackson's opinion that plaintiff was temporarily, totally disabled beginning in June 1999 through at least January 2004.  [See JS at 4-17.]  As set forth below, the Court agrees with plaintiff.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the plaintiff (treating physicians); (2) those who

---

[4]   Listing 1.04 pertains to disorders of the spine.  20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.

[5]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) and 416.967(b).

examine but do not treat the plaintiff (examining physicians); and (3) those who neither examine nor treat the plaintiff (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. As a general rule, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the plaintiff. See Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830.

The record indicates that Dr. Jackson first examined plaintiff on October 12, 1998.[6] [AR at 529-34.] Based on that examination, Dr. Jackson's clinical impression included that plaintiff had "probable degenerative disc disease, lumbar spine." [AR at 532.] He ordered an MRI scan of plaintiff's lumbar spine, prescribed Motrin to be taken three times per day, and noted "a high likelihood that [plaintiff] may have to [be] placed on temporary total disability." [AR at 533-34.]

After treating plaintiff's back problems with, among other things, epidural blocks and an IF unit [AR at 319-24], Dr. Jackson ordered a discogram at L1-2, L2-3, L3-4, L4-5, and L5-S1. [AR at 316, 319, 322.] Dr. Jackson examined plaintiff on June 18, 1999, and included in his objective findings that plaintiff had lost some range of motion of the lumbar spine and that the "MRI shows disc degeneration at all levels of [the] lumbar spine." [AR at 318.] Dr. Jackson further noted that the discogram revealed "severely positive" results at L5-S1. [AR at 316.] At that examination, Dr. Jackson prescribed a lumbar laminectomy, a surgical procedure. [AR at 316-18.] Dr. Jackson performed surgery on plaintiff on September 10, 1999, which included the following procedures: lumbar laminectomy, foraminotomies and a left-sided disc excision at L5-S1, posterior interbody

---

[6]     A review of the record indicates that Dr. Jackson had an ongoing treating relationship with plaintiff from October 12, 1998, to October 27, 2003. [AR 254-330, 503, 514-26, 529-34.] Therefore, Dr. Jackson is considered a treating source, and his opinion can only be rejected for specific and legitimate reasons supported by substantial evidence. See 20 C.F.R. §§ 404.1502, 404.1527, 416.902 416.927.

fusion at L5-S1 with bone bank iliac crest, and bilateral-lateral fusion at L5-S1 with placement of Isola pedicle screw hardware and use of right iliac crest graft. [AR at 314, 521-25.] At pre- and post-operative examinations on September 6 and 22, 1999, Dr. Jackson found that plaintiff continued to experience restricted range of motion and tenderness of the lumbar spine, as well as back pain caused by straight leg raising. [AR at 310, 313.] In examinations beginning on November 1, 1999, and continuing through June 12, 2001, Dr. Jackson found that plaintiff's range of motion of the lumbar spine remained restricted, that plaintiff continued to experience lumbar spine tenderness, and that straight leg raising caused hamstring tightness and/or pain in his back and/or legs. [AR at 284-303, 305, 307.] Dr. Jackson recommended additional surgery [AR at 284-85, 288], and, on July 13, 2001, he performed a second lumbar spinal surgery on plaintiff, which included an exploration of lumbar fusion with hardware removal, reimplantation of hardware, and repeat fusion using a bone graft. [AR at 281, 518-20.]

The record then shows that, in examinations from October 16, 2001, through April 29, 2003, Dr. Jackson found that plaintiff's range of motion of the lumbar spine remained restricted, that plaintiff continued to experience lumbar spine tenderness, and that straight leg raising continued to cause hamstring tightness and/or pain in his back and/or legs. [AR at 263-68, 272-76.] Dr. Jackson performed a third surgery on May 30, 2003, an anterior lumbar corpectomy and discectomy at L5-S1 with fusion utilizing a VertiGraft and left iliac crest bone graft. [AR at 260-61, 514-15.] In examinations on September 10, 2003, and October 27, 2003, Dr. Jackson found that, despite the third surgery, plaintiff's range of motion of his lumbar spine, lumbar spine tenderness, and straight leg raising response remained the same. [AR at 254, 257.]

The record also includes Dr. Jackson's November 27, 2000, Primary Treating Physician's Supplemental Report in which Dr. Jackson reviewed examining physician Dr. John Portwood's October 16, 2000, Defense Qualified Medical Examination report.[7] [AR at 295-99.] According to Dr. Jackson, Dr. Portwood and Dr. Jackson agreed that plaintiff "responded very poorly to the surgical intervention and [that plaintiff's] prognosis is very guarded." [AR at 296.] Dr. Portwood

---

[7] The record does not contain a copy of Dr. Portwood's October 16, 2000, report.

apparently concluded that plaintiff was at permanent and stationary[8] status and that he should be restricted to semi-sedentary work. [AR at 296.] According to Dr. Jackson, however, plaintiff was not at permanent and stationary status as of November 2000. [AR at 297.] Nevertheless, Dr. Jackson opined that *if* plaintiff were at permanent and stationary status at that time, "he would more likely be given a restriction to light work with some preclusions on sitting and weightbearing." [AR at 297.] However, Dr. Jackson's Primary Treating Physician's Progress Reports indicate that, beginning on June 18, 1999, and continuing for four-and-one-half years through December 15, 2003, plaintiff was temporarily, totally disabled ("TTD"). [AR at 254-57, 259-60, 263-70, 272-76, 278, 281, 284-92, 300-03, 305, 310, 313, 315, 318.]

Although Dr. Jackson assessed plaintiff's disability status for workers' compensation purposes and recorded his findings using State of California Division of Workers' Compensation forms [AR at 254-55, 257, 259-60, 263-70, 272-76, 278, 281, 284-87, 289-92 300-03, 305, 307, 310, 313, 315, 318], and while California's worker's compensation's guidelines for work capacity differ from those used in the Social Security setting, and are not conclusive, an ALJ may determine what inferences "logically flow[] from [such] evidence." Macri v. Chater, 93 F.3d 540, 543-44 (9th Cir. 1996) (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982)); see Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988) (finding that the categories of work under Social Security disability schemes are measured "quite differently" from California's workers' compensation claims). Despite the differences between workers' compensation and Social Security work categories, an ALJ "may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D. Cal. 2002) (citing Coria v. Heckler, 750 F.2d 245, 247-48 (3rd Cir. 1984) (holding that the ALJ, by neglecting to consider medical reports submitted in a state workers' compensation

---

[8] A disability is considered "permanent and stationary" for workers' compensation purposes once the employee has reached maximum medical improvement "or his [or her] condition has been stationary for a reasonable period of time." Robertson v. Workers' Comp. Appeals Bd., 112 Cal.App.4th 893, 897, 5 Cal.Rptr.3d 485, 486-87 (Cal.App. 3 Dist. 2003).

proceeding, failed to weigh all of the evidence of record)). This is especially true where, for workers' compensation purposes, a doctor expresses an opinion that a plaintiff is disabled. Indeed, in California workers' compensation parlance, a "period of temporary total disability is that period when the employee is *totally incapacitated for work* and during which he may reasonably be expected to be cured or materially improved with proper medical attention." W. M. Lyles Co. v. Workmen's Comp. Appeals Bd., 3 Cal.App.3d 132, 136, 82 Cal.Rptr. 891 (Cal.App. 2 Dist. 1969) (emphasis added). See Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 605 (9th Cir. 1996) ("[An employee] is considered temporarily *totally* disabled if he is *unable to earn any income* during the period when he is recovering from the effects of the injury.") (second emphasis added) (quoting Herrera v. Workmen's Comp. Appeals Bd., 71 Cal.2d 254, 257, 78 Cal.Rptr. 497 (1969)).

Although the ALJ summarized some of Dr. Jackson's treatment records and appeared to rely on Dr. Jackson's hypothetical statement that, *if* plaintiff were stationary, he would find plaintiff capable of light work, the ALJ did not expressly reject Dr. Jackson's opinion that plaintiff was temporarily, totally disabled for a continuous period of four-and-one-half years prior to his date last insured. At most, since the ALJ found plaintiff able to work prior to September 5, 2006, it appears that the ALJ rejected Dr. Jackson's opinion of disability, but did so without providing an express reason. While an ALJ "is not bound by the uncontroverted opinions of [a plaintiff's] physicians on the ultimate issue of disability, [] he cannot reject them without presenting clear and convincing reasons for doing so.'" Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (quoting Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984)); see also Lester, 81 F.3d at 830. Where the treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that the Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); Social Security Ruling ("SSR") 96-2p[9] ("[T]he notice of

---

[9] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social
(continued...)

9

the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."). The ALJ's failure to provide any reasons for rejecting Dr. Jackson's opinion constitutes error warranting remand, since an ALJ is required to provide specific and legitimate reasons based on substantial evidence in the record for rejecting a treating physician's findings (Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F. 3d 1449, 1453-54 (9th Cir. 1993)), including those findings expressed in workers' compensation parlance. See Booth, 181 F.Supp.2d at 1105 ("[T]he ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion.").

Moreover, "[j]udicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's failure to explain why he disregarded medical evidence prevented "meaningful judicial review"). The ALJ's failure to explain why he rejected Dr. Jackson's findings that plaintiff was temporarily, totally disabled from June 18, 1999, to December 15, 2003, prevents judicial review.[10] Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that

_____

[9](...continued)
Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

[10]    Defendant's assertion that the ALJ properly rejected Dr. Jackson's opinion that plaintiff was temporarily, totally disabled is without merit. According to defendant, since"Dr. Jackson's opinion unequivocally involved the acceptance of numerous subjective symptom and pain complaints by [p]laintiff" and since Dr. Jackson noted that plaintiff "appeared to have low pain tolerance," the ALJ rightfully found plaintiff not credible and rejected Dr. Jackson's opinion, which relied upon plaintiff's subjective testimony. [JS at 17-20.] The ALJ, however, did not explain that he rejected Dr. Jackson's opinion on the grounds that it was based on plaintiff's subjective testimony, which lacked credibility. Therefore, defendant's argument is unavailing, since the Court will not rely on reasons to support the ALJ's decision that the ALJ did not provide. Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D. Cal. 1996) ("If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand[,] . . . even (continued...)

the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that . . . [the] [C]ourt can determine whether the reasons for rejection were improper.") (internal citation omitted). Remand is warranted so that the ALJ may properly consider Dr. Jackson's opinion. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (holding that an ALJ must "provide detailed, reasoned and legitimate rationales for disregarding [] physicians' findings"); see, e.g., Nelson v. Barnhart, 2003 WL 297738, at *4 (N.D. Cal. Feb. 4, 2003) ("Where an ALJ fails to 'give sufficiently specific reasons for rejecting the conclusion of [a physician],' it is proper to remand the matter for 'proper consideration of the physicians' evidence.'") (brackets in original) (citation omitted).

Furthermore, to the extent that the ALJ credited Dr. Jackson's statement regarding plaintiff's hypothetical ability to perform light work, the record does not fully support the ALJ's conclusion that Dr. Jackson opined in November 2000 that plaintiff was *actually* capable of performing light work. In fact, Dr. Jackson stated in the November 27, 2000, report to which the ALJ referred that plaintiff was not at permanent and stationary status. Dr. Jackson hypothesized, however, that if he were to place plaintiff on permanent and stationary status at that time, he would "likely [] give[] [plaintiff] a restriction to light work with some preclusions on sitting and weightbearing [sic]." [AR at 297.] In relying on Dr. Jackson's November 2000 light work statement, the ALJ improperly focused upon one remark in the record that supported his conclusion that plaintiff was not disabled and ignored the abundant evidence indicating that Dr. Jackson found plaintiff temporarily, totally disabled for a continuous period of four-and-one-half years prior to

---

[10](...continued)
if [the Administration] can offer proper post hoc explanations for such unexplained conclusions.") (quoting Williams v. Bowen , 664 F.Supp. 1200, 1207 (N.D.Ill. 1987)). See also Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency."). Here, not only did the ALJ not reject Dr. Jackson's opinion on the grounds defendant put forth, but the ALJ did not even acknowledge Dr. Jackson's opinion that plaintiff was temporarily, totally disabled for a four-and-one-half year period prior to his date last insured. In any event, contrary to defendant's assertion, Dr. Jackson did not rely solely on plaintiff's subjective symptoms in finding plaintiff temporarily, totally disabled, but based his opinion on plaintiff's MRI, lumbar spine range of motion, and straight leg raising test results. [AR at 254-57, 259-60, 263-70, 272-76, 278, 281, 284-92, 300-03, 305, 310, 313, 315, 318.]

plaintiff's date last insured, including as of December 15, 2003.[11]  See Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (finding error in an ALJ's "selective[] focus[] on . . . [evidence] which tend[s] to suggest non-disability"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (stating that it is error for an ALJ to ignore or misstate competent evidence in order to justify his conclusion).

Plaintiff asserts that the ALJ's failure to properly consider Dr. Jackson's opinion requires that this Court credit Dr. Jackson's opinion as true, find plaintiff disabled, and reverse and award benefits. [JS at 16-17.]  The Court has discretion to remand for further proceedings, or to reverse for immediate payment of benefits "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292.  Here, a number of outstanding issues must be resolved before a determination can be made as to whether plaintiff was disabled prior to September 5, 2006, the date on which the ALJ found that plaintiff became disabled.  First, even if this Court were to credit as true Dr. Jackson's opinion that plaintiff was temporarily, totally disabled through December 15, 2003, Dr. Jackson found plaintiff disabled according to workers' compensation standards and did not express an opinion as to whether plaintiff was disabled for purposes of Social Security Disability Insurance Benefits.  See Booth, 181 F.Supp.2d at 1105.  Furthermore, although the record indicates that Dr. Jackson found plaintiff temporarily, totally disabled until December 15, 2003 [AR at 254], the record does not indicate whether Dr. Jackson found plaintiff disabled from December 15, 2003, through September 5,

_____

[11]  While the ALJ appeared to credit Dr. Jackson's brief statement that, under a certain hypothetical situation, he would find plaintiff capable of performing light work [AR at 18], Dr. Jackson was evidently referring to light work in worker's compensation terms and not to light work in Social Security terms. [AR at 297.]  Work categories for California workers' compensation and Social Security differ in that the former are based on "whether a claimant sits, stands, or walks for most of the day," while the latter are "differentiated primarily by step increases in lifting capacities." Booth, 181 F.Supp.2d at 1104-05 (quoting Desrosiers, 846 F.2d at 576).  "While the ALJ's decision need not contain an explicit 'translation[]' [of terms,] it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Booth, 181 F.Supp.2d 1106.  The ALJ's decision does not indicate that he adequately considered the distinction in meanings of the term "light work" in the workers' compensation and Social Security contexts.

2006. Thus, remand is necessary for the ALJ to reassess plaintiff's disability status prior to September 5, 2006, after the ALJ has reconsidered Dr. Jackson's opinion as stated in the medical records summarized herein, and in any additional records that may be further developed on remand.

## VI.

### REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider Dr. Jackson's opinion that plaintiff was temporarily, totally disabled from June 18, 1999, to December 15, 2003. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: July 15, 2011

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE